UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LEONARD McKENZIE, a/k/a
Muhsin Muhammad

                                       Plaintiff,

    vs.                                                     9:01-CV-1496
                                                              (J. Sharpe)

SGT. MARTENS,

                                     Defendant.
_____

APPEARANCES                              OF COUNSEL

LEONARD McKENZIE
a/k/a Muhsin Muhammad
Plaintiff pro se

ELIOT SPITZER                          SENTA B. SIUDA
Attorney General of the              Asst. Attorney General
State of New York
Attorney for Defendants

GUSTAVE J. DI BIANCO, Magistrate Judge

## REPORT-RECOMMENDATION

    This matter has been referred to the undersigned for Report and

Recommendation by the Honorable Gary L. Sharpe, United States District Judge,

pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).

    In this amended civil rights complaint (Dkt. Nos. 6, 53)[1], plaintiff alleges that

---

[1] Plaintiff filed an amended complaint on October 17, 2001 in which he detailed his statement of facts and claims against many defendants. (Dkt. No. 6). On March 5, 2003, after many of the defendants had already been dismissed, and in an effort to determine whether plaintiff had exhausted his administrative remedies with respect to remaining defendants Martens and Putnam, Judge Kahn ordered that plaintiff file an "amended complaint" indicating plaintiff's efforts at exhaustion. (Dkt.

the only remaining defendant, Martens placed plaintiff in full restraints and moved plaintiff to a more restrictive cell in the Special Housing Unit (SHU) of Auburn Correctional Facility in retaliation for a grievance that plaintiff wrote against Sergeant Coventry and Corrections Officer Whitney. (Dkt. No. 6 at ¶ 15). Plaintiff seeks substantial monetary relief.

Presently before the court is defendant Martens's motion for summary judgment pursuant to FED. R. CIV. P. 56. (Dkt. No. 70). Plaintiff has not responded to the motion. For the following reasons, this court agrees with defendant and will recommend dismissal of the complaint in its entirety.

## DISCUSSION

**1.     Summary Judgment**

Summary judgment may be granted when the moving party carries its burden of showing the absence of a genuine issue of material fact. FED. R. CIV. P. 56; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) (citations omitted). "Ambiguities or inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion." *Id*. However, when the moving party

---

No. 49 at 3). On May 29, 2003, plaintiff filed a document labeled "Second Amended Complaint." (Dkt. No. 53). However, this document only indicated plaintiff's efforts at exhaustion and did not repeat the allegations of the first amended complaint. On June 11, 2003, Judge Kahn, to whom the case was assigned at the time, found that plaintiff had exhausted his remedies as to defendant Martens, but not as to defendant Putnam, and thus ordered dismissal of the complaint as to defendant Putnam. (Dkt. No. 56). Since the complaint filed by plaintiff on May 29 was not a complete pleading, Judge Kahn ordered defendant to respond to the amended complaint that was filed October 17, 2001. (Dkt. No. 6).

has met its burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

At that point, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Id. See also Burt Rigid Box v. Travelers Prop. Cas. Corp.*, 302 F.3d 83, 91 (2d Cir. 2002)(citations omitted).  However, only disputes over facts that might affect the outcome of the suit under governing law will properly preclude summary judgment. *Salahuddin v. Coughlin*, 674 F. Supp. 1048, 1052 (S.D.N.Y. 1987)(citation omitted).

**2.**     **Facts and Procedural History**

Plaintiff originally sued many defendants in this action, all of whom have been dismissed except for defendant Martens.  In his amended complaint, plaintiff alleges that on August 16, 2001, plaintiff filed a grievance against defendant Martens because defendant Martens moved plaintiff to a cell in SHU near mentally disturbed inmates. (Dkt. No. 6 at ¶ 15).  Plaintiff alleges that defendant Martens engaged in this conduct because plaintiff filed a grievance against Sergeant Coventry and Corrections Officer (CO) Whitney on July 25, 2001. *Id.*  It is unclear from the complaint when plaintiff's cell location was changed, although it appears to have been between July 25 and August 16, 2001.

3

Plaintiff also alleges that on September 26, 2001, plaintiff filed a second grievance against CO Putnam, and that defendant Martens was assigned to investigate the grievance. (Dkt. No. 6 at ¶ 11-12). Plaintiff appears to claim that in retaliation for filing the grievance against CO Putnam, defendant Martens ordered that plaintiff be placed in full restraints every time that he left his cell. *Id.* at ¶ 12. Plaintiff claims that defendant Martens's stated reason for this order was that plaintiff had threatened CO Putnam in plaintiff's grievance.

In support of the summary judgment motion, defendant Martens has submitted his own affidavit, together with exhibits relating to plaintiff's grievance and explaining the reason that defendant Martens moved plaintiff's cell location. Defendant Martens states that during the time in question, he was a Sergeant in charge of the SHU at Auburn Correctional Facility. Martens Aff. ¶ 5. Plaintiff was housed in SHU at all times relevant to this action. Defendant Martens states that he supervised staff that worked in SHU, and he was responsible for security in SHU. *Id.* ¶ 6.

Defendant Martens states the Auburn SHU is divided into sections that are labeled alphabetically, with a few cells in each section. *Id.* ¶ 7. Defendant Martens states that in July of 2001, plaintiff was housed in the L-section of Auburn's SHU. *Id.* ¶ 8. Defendant Martens also states that in July of 2001, he received verbal complaints from other inmates housed in L-section that plaintiff was banging on his cell and disrupting the unit. *Id.* ¶ 9. Defendant Martens states that he reported these

4

complaints to his supervisor, Lieutenant Perkins, who gave defendant Martens verbal authority to move plaintiff's cell location. *Id.* ¶ 10. Defendant Martens states that plaintiff was moved to J-section on August 10, 2001. *Id.* ¶ 11.

Defendant Martens states that plaintiff did not have a cell-shield order at the time that he was moved to J-section, and that although there was no shield on plaintiff's cell door, all the cells in J-section have a Lexan shield across two thirds of the front of the cell. *Id.* ¶¶ 12-13. Defendant Martens claims that the only reason that he moved plaintiff was because of the complaints from the other inmates, and although defendant Martens was aware that plaintiff filed grievances, Martens was not aware of the subject matter of those grievances unless he was involved in the investigation. *Id.* ¶ 16.

Defendant Martens has included a copy of plaintiff's grievance against him and the investigation that followed. Defendant's Exs. A & B.

### 3. **Retaliation**

In order to establish a claim of retaliation for the exercise of a constitutional right, plaintiff must show first, that he engaged in constitutionally protected conduct, and second, that the conduct was a substantial motivating factor for adverse action taken against him by defendants. *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003)(citing *Gayle v. Gonyea*, 313 F.3d 677 (2d Cir. 2002); *Hendricks v. Coughlin*, 114 F.3d 390 (2d Cir. 1997)). The court must keep in mind that claims of retaliation

5

are "easily fabricated" and thus, plaintiff must set forth non-conclusory allegations. *Id.* (citing *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002)).[2]

The court in *Dawes* stated that in order to survive **summary dismissal**, the plaintiff's "non-conclusory" allegations must establish

> (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech [or conduct] and the adverse action.

239 F.3d at 492 (citations omitted). Additionally, in a prison context, all that is required is that the adverse conduct by defendant would have deterred a similarly situated individual of ordinary firmness from exercising his First Amendment rights. *See Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004). In *Gill*, the court held that this objective test applied, even where a particular plaintiff was ***not subjectively deterred*** and continued to file grievances and lawsuits. *Id.*

Finally, even if plaintiff can show that plaintiff's protected conduct was a motivating factor in the defendant's adverse action, defendant may evade liability by showing that he would have taken the same action even in the absence of the protected

---

[2] The court would note that *Dawes* did not create a "heightened pleading standard", and to the extent that it did create such a standard, the Second Circuit held that *Dawes* was inconsistent with *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002). *See Phelps v. Capnolas*, 308 F.3d 180, 187 (2d Cir. 2002). The decision in *Phelps* resulted from a motion to dismiss for failure to state a claim under FED. R. CIV. P. 12(b)(6), and the court was considering only the face of the complaint. This case comes before the court upon a motion for summary judgment, thus, this case is distinguishable from a situation in which only the complaint is being examined.

conduct. *Bennett*, 343 F.3d at 137 (citing *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)).

Plaintiff in this case has established that the conduct to which he refers, filing grievances, is constitutionally protected. Defendant concedes this issue. However, plaintiff cannot show that his move to a more restrictive cell ***within SHU*** is adverse action, and plaintiff cannot show a causal connection between the move to a J-section cell and his constitutionally protected conduct. Plaintiff claims that defendant Martens retaliated against plaintiff on August 10, 2001[3]. Defendant has submitted a list of grievances filed by plaintiff, beginning August 7, 2000 and ending January 22, 2002[4]. Defendant's Ex. B. Plaintiff filed four grievances in July of 2001: July 23, 24, and two grievances on July 26. One of the titles of the grievances filed on July 26 is "Harassment by C.O." *Id.* at B-3.

Plaintiff filed ***seventeen*** grievances in August of 2001. *Id.* at B-3-5. These grievances included complaints of harassment, late mail, denial of a shower, and various medical complaints. *Id.* On August 21, 2001, plaintiff filed four grievances,

---

[3] Actually, the dates of this cell move are a little unclear. Defendant's affidavit states that he moved plaintiff on August 10, 2001, however, the grievance alleges that plaintiff was moved on August 17, 2001, and the investigation of the grievance appears to state that plaintiff was moved on August 16, 2001. The discrepancy in these dates does not change this court's decision.

[4] The court notes that the dates on the grievances from what the court assumes is 2001 are labeled 1901, however, it is clear that this cannot be the year that these grievances were filed, since they occur between "00" and "02". Defendant's Ex. B.

one for harassment, one for chest pains, one entitled "move informant"[5], and one that requested cleaning of his cell shield. *Id.* at B-4-5. On ***August 20, 2001***, plaintiff filed a grievance entitled "Harassment by Sgt. 'C'". *Id.* at B-4. On August 22, 2001, plaintiff filed a grievance entitled "Retaliation", on August 29, 2001, plaintiff filed a grievance entitled "Harassment by C.O. 'P', and on August 30, 2001, he filed a grievance entitled "Harassment by SHU Staff." *Id.* at B-5. This grievance related to plaintiff's allegedly retaliatory cell move. Defendant's Ex. A.

Certainly, plaintiff cannot show that ***he*** was deterred from engaging in the protected conduct of filing grievances since he filed seventeen grievances in August of 2001, including four grievances on August 21, after he had been placed in the new, less desirable cell. Thus, plaintiff has not met any ***subjective*** test for the "chilling" of his constitutional rights. This court is well-aware, however, that in *Gill*, the Second Circuit stated that the court must apply the ***objective*** test of whether an inmate of "ordinary firmness" would be deterred from exercising his constitutional rights as the result of defendant's actions. This court finds that plaintiff cannot even meet the objective test.

The court would first point out that *Gill* involved a motion to dismiss for failure

---

[5] It is unclear what plaintiff means by "move informant". Although plaintiff had been moved to the undesirable cell by August 21, he had previously filed a grievance entitled "move informant on July 23, 2001, prior to his move to a J cell. Defendant's Ex. B at B-3. Thus, the grievance "move informant" does not appear to refer to moving the plaintiff.

8

to state a claim. 389 F.3d at 380.  This case comes to the court on a motion for summary judgment in which defendant has submitted, not only a list of the other grievances filed by plaintiff, but also has submitted the grievance filed against this defendant, together with the investigation of the grievance in which appears the alleged non-retaliatory reason for defendant's actions.

The "adverse" action alleged by plaintiff is the move to J-section from L-section *within SHU*.  The only additional restriction involved in J-section was a partial cell shield, and according to plaintiff, a disruptive inmate housed in the same section. Generally, a plaintiff has no right to be housed in a particular cell. *Russell v. Scully*, 15 F.3d 219, 221 (2d Cir. 1993), *modified on other grounds*, 15 F.3d 219, 223-24 (2d Cir. 1994).  Defendant Martens could have moved plaintiff to a more restrictive cell in SHU for no reason at all.  The court does not find that this additional small restriction for an inmate who was already in SHU was sufficiently "adverse" to deter an inmate of ordinary firmness from exercising his constitutional rights.  Thus, plaintiff has not shown that defendant's action was "adverse".

Additionally, assuming that the action was "adverse" plaintiff has not shown a causal connection between the protected action and defendant's conduct.  There is no indication that defendant Martens knew about the particular subjects of these many grievances and no indication that defendant was assigned to investigate any of the grievances.  Almost any action that prison officials took against plaintiff in August of

9

2001 could be claimed to have been in retaliation for a grievance, since plaintiff filed seventeen grievances in August of 2001, many of which occurred after the cell move.

The internal investigation of plaintiff's grievance against Martens and other officers relating to the cell move shows that Martens claims to have moved plaintiff because Martens received complaints from other inmates claiming that plaintiff was being disruptive. Defendant's Ex. A at A-3.  The memorandum written by defendant Martens to Deputy Superintendent of Security (DSS) Burns states that defendant Martens moved plaintiff on August 16, 2001, with the verbal authority of Lieutenant Perkins because of complaints that Martens received from other inmates, claiming that plaintiff was "banging on his cell walls and disrupting the section." *Id.*  Defendant Martens also stated that he interviewed plaintiff, who stated during the interview that Martens was harassing him, to which Martens responded that plaintiff's behavior would dictate his cell location, and that assignments were not "permanent." *Id.* Finally, the memorandum to DSS Burns implied that plaintiff continued to be disruptive even after the move, and that on September 2, 2001, plaintiff was found with a weapon and placed on deprivation of recreation.

Plaintiff has not responded to defendant's motion for summary judgment, and this court finds that although the time between any of plaintiff's grievances and defendant's action could constitute circumstantial evidence that the defendant's actions were "causally" connected to the plaintiff's protected conduct, based upon the

additional discovery, it is clear that the plaintiff's move to J-section would have taken place without the protected conduct. Defendant had a non-retaliatory reason for the move, and plaintiff has not come forward with any evidence or statement to the contrary.

Plaintiff has alleged in the amended complaint that defendant Martens investigated the late August grievance against CO Putnam and therefore, would have known about that grievance. However, the grievance against C.O. Putnam, filed on August 29, 2001 was ***well after plaintiff's move*** to the semi-shielded cell. Plaintiff may be claiming that defendant Martens's order that plaintiff be placed in restraints when moved out of his cell was in retaliation for the grievance against Putnam. However, plaintiff himself states that defendant Martens's alleged reason for this action was that plaintiff threatened CO Putnam in that grievance. Plaintiff does not allege in his amended complaint that this statement by Martens was untrue, and thus, plaintiff himself has set forth a non-retaliatory reason for the defendant's actions. Thus, plaintiff cannot meet the requirements for showing retaliation sufficient to survive defendant's motion for summary judgment.

**WHEREFORE,** based on the findings above, it is

**RECOMMENDED,** that defendant Martens's motion for summary judgment (Dkt. No. 70) be **GRANTED**, and the amended complaint be **DISMISSED IN ITS ENTIRETY.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: August 25, 2005

_____
Hon. Gustave J. DiBianco
U.S. Magistrate Judge